UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| LYNDA S. ROWLAND | CIVIL ACTION NO. 22-0667[1] |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| OUTBACK STEAKHOUSE OF FLORIDA, LLC, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court are two Motions for Summary Judgment filed by Defendants Outback Steakhouse of Florida, LLC, d/b/a Outback Steakhouse, Bloomin Brands, Inc. d/b/a Outback Steakhouse, and National Retail Properties, L.P. ("Defendants"). See Record Documents 43 and 45. The first motion seeks summary judgment in Defendants' favor as to the claims asserted by Plaintiff Lynda Rowland ("Rowland"). See Record Document 43. The second motion seeks summary judgment in Defendants' favor as to the claims asserted by Plaintiff Patricia Stallcup ("Stallcup"). Rowland and Stallcup (sometimes referred to as "Plaintiffs") opposed the motions. See Record Documents 61 and 67. Defendants replied. See Record Documents 69 and 72. For the reasons set forth below, the defense Motions for Summary Judgment (Record Documents 43 and 45) are **DENIED**.

**BACKGROUND**

This is a slip and fall case relating to two incidents – a slip and a slip and fall – that occurred at the Outback Steakhouse restaurant in Shreveport, Louisiana, on December 12, 2020. Many of the facts are undisputed.

---

[1] The instant Memorandum Order shall also be filed in member case, Patricia M. Stallcup v. Outback Steakhouse of Florida, LLC, et al., 22-cv-0786.

Stallcup was meeting her friend, Rowland, at the Shreveport Outback Steakhouse. Rowland arrived first. Rowland went towards a left back booth in the bar area of the restaurant. Before sitting down, Rowland slipped. She did not fall, as she caught herself on the back of a booth. She then sat down in the booth and faced the entrance door. Rowland did not see anything on the ground in the area where she slipped. After the slip, she did not touch the floor or the bottom of her shoes. Rowland testified in her deposition that a bartender "came to smear [a] napkin around with his foot" in the area where she slipped. Record Document 45-3 (Roland Deposition) at 47-48. Outback employee Shamodre Green ("Green") likewise testified in her deposition that fellow Outback employee Tyler Northern ("Northern") grabbed a towel/rag and wiped the floor area where Rowland slipped. See Record Document 67-12 (Green Deposition) at 16. Rowland did not see anything on the towel/rag.

Stallcup arrived at the restaurant approximately ten to fifteen minutes later. Stallcup saw Rowland and began walking towards her. Stallcup slipped and fell a couple of booths from where Rowland was sitting. Stallcup testified in her deposition that both of her feet slipped. See Record Document 45-4 (Stallcup Deposition) at 24. She initially landed on her knees and then fell back on her buttocks. Stallcup did not notice anything on the floor before or after she fell. She did not find any residue on her shoes, her knees, or her buttocks after her fall. She testified in her deposition that after she fell, one or two Outback employees took a cloth napkin, threw it on the floor, and "rubbed it around with their foot" in the area where she fell. Id. at 30. Stallcup did not see anything on the napkin afterwards; however, she did note that the napkin was black. Rowland, who witnessed Stallcup's slip and fall, stated she did not notice anything on the floor where

Stallcup fell. She also testified that an Outback employee threw a napkin down where Stallcup fell.

Defendants have now moved for summary judgment on Rowland and Stallcup's claims pursuant to Louisiana Revised Statutes 9:2800.6, Louisiana's Merchant Liability Statute. Rowland and Stallcup's claims are separate and distinct; thus, Defendants filed two separate Motions for Summary Judgment. The Court will now consider said motions.

## LAW AND ANALYSIS

**I.      Summary Judgment Standard.**

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." Deshotel v. Wal-Mart Louisiana, L.L.C., 850 F.3d 742, 745 (5th Cir. 2017); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). As such, the party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995). Courts must deny the moving party's motion for summary judgment if the movant fails to meet this burden. See id.

If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." Id. (citing Celotex, 477 U.S.

3

at 323). In evaluating motions for summary judgment, courts must view all facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no genuine issue for trial – and thus a grant of summary judgment is warranted – when the record as a whole "could not lead a rational trier of fact to find for the non-moving party . . . ." Id.

## II.    Louisiana's Merchant Liability Statute.

In a diversity case such as this one, federal courts apply state substantive law. See Moore v. State Farm Fire & Cas. Co., 556 F.3d 264, 269 (5th Cir. 2009); Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  Accordingly, liability in this case is governed by the Louisiana Merchant Liability Statute, La. R.S. 9:2800.6.  Section 2800.6 imposes a duty of care on a merchant to those lawfully on its premises, "to keep the premises free of any hazardous conditions which reasonably might give rise to damage."  La. R.S. 9:2800.6(A). When a negligence claim is brought against a merchant based on injuries sustained in a fall caused by a condition on the merchant's premises, a plaintiff bears the burden of proving the existence of a hazardous condition and that:

1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

3) The merchant failed to exercise reasonable care.

La. R.S. 9:2800.6(B).

Importantly, a plaintiff bears the burden of proof as to each of these three elements.  In fact, "[t]he burden of proof does not shift to the defendant at any point, and failure to prove any one of these elements negates a plaintiff's cause of action." Melancon v. Popeye's Famous Fried Chicken, 2010-1109, p. 3 (La. App. 3 Cir. 3/16/11);

59 So. 3d 513, 515 (citing White v. Wal-Mart Stores, Inc., 97-0393 (La. 9/9/97); 699 So. 2d 1081); Ferrant v. Lowe's Home Centers, Inc., 494 Fed. Appx. 458, 460 (5th Cir. 2012).

## III. Analysis.

The beginning point of the Court's analysis is to determine whether a hazardous condition existed and, if so, whether such condition constituted an unreasonable risk of harm. Defendants argue that neither Rowland nor Stallcup have presented evidence as to what the condition was in this case, thereby failing to meet the prerequisite showing imposed by Section 2800.6(B)(1). Defendants submit that this matter is nearly identical to Deal v. Outback Steakhouse of Fla., LLC, No. 19-CV-00904, 2021 WL 3577003, *4 (W.D. La. Aug. 12, 2021), wherein the court held that plaintiff had failed to provide any factual support other than mere allegations and her own uncorroborated testimony to create a genuine issue of material fact as to the existence of a hazardous condition that presented an unreasonable risk of harm. Like Plaintiffs, this Court believes Deal is distinguishable from the instant matter.

The summary judgment record in Deal did not include the expert opinion of a safety engineer that "the slip events at the restaurant were likely caused by a built-up grease film on the floor surface, potentially combined with general dirt and leftover solution (detergent/chemical) used as part of the 'cleaning' process." Record Document 61-2 (Expert Report of Jason English) at 6.[2] Additionally, while the parties in Deal appeared to generally dispute whether Outback's floor was maintained in such a way as

---

[2] The Fifth Circuit has held that a waxed floor is not per se dangerous; rather, "absent some other indication of dangerousness (e.g., long term wax build up or **expert testimony explaining the inherently dangerous nature of a particular waxed floor**), evidence that a floor was recently waxed alone cannot suffice for a jury to find the existence of an unreasonably dangerous condition." McGinnis v. Target Corp. of Minnesota, 801 F. App'x 298, 299 (5th Cir. 2020) (emphasis added).

to render it "generally slippery" and thus potentially constitute an unreasonably dangerous condition, there was no reference to specific facts and evidence regarding the cleaning products used on the floor and/or the frequency of the cleanings. In the instant matter, there are factual disputes relating to the cleaning chemicals used on the dining room vinyl and wood look floors and the frequency of the cleaning of the floors. See id. at 7-10; see also Record Document 67-5 (Defendants' Second Supplemental and Amended Answers to Interrogatories). While the Deal court found that the plaintiff came forward with only conclusory allegations and her own uncorroborated testimony regarding the alleged hazardous condition, the summary judgment record in this case contains more than mere speculative allegations. While neither Rowland nor Stallcup saw anything on the floor, at least two Outback employees attempted to wipe the area of the floor where the incidents occurred. At the summary judgment stage, one justifiable inference to be drawn from these facts is that there was something on the floor. See Anderson, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). At this stage, the Court believes Plaintiffs have presented sufficient summary judgment evidence that there was a hazardous condition on the floor that presented an unreasonable risk of harm that was reasonably foreseeable.

A plaintiff can satisfy the second element of Section 2800.6(B) in two ways. See McGinnis v. Target Corp. of Minnesota, No. CV 18-9693, 2019 WL 4393135, at *3 (E.D. La. Sept. 13, 2019), aff'd, 801 F. App'x 298 (5th Cir. 2020). The first way is if a defendant "creates" the dangerous condition. Id., citing Deshotel, 850 F.3d at 748 ("[T]he plain meaning of the statute make[s] clear; plaintiffs must prove either creation of the hazard or actual or constructive notice thereof. There is no requirement of notice when it comes

6

to creation of the hazard."). Louisiana courts have held that in the context of floors made hazardous by conditions such as wax buildup, if a defendant maintains its own floors, then plaintiffs are not required to prove that the defendant had notice or constructive notice of the possible buildup.  See id.  If there was wax buildup, then the defendant created it; thus, the notice requirement of La. R.S. 9:2800.6 does not apply.  See id.  Conversely, if the defendant did not maintain its own floors, then the plaintiff must prove the defendant had notice or constructive notice of the wax buildup.  See id.  The Defendants have not pointed this Court to any case suggesting the same rationale would not apply to grease buildup, the alleged hazardous condition in this case.

Plaintiffs have presented the Defendants' Second Supplemental and Amended Answers to Interrogatories, which states:

> In light of the deposition testimony of Dustin York, undersigned counsel asked Dustin York to confirm who maintained or cared for the area where this incident occurred on the date of this incident. Dustin York confirmed that Defendants did not hire any other individual or entity. For full clarity, even though it is overly responsive to this Interrogatory, Defendants state Tanina Scott cleaned the floors on and around the date of this incident and Jarvis Payne assisted occasionally, usually by moving heavy items for Ms. Scott. They were employees of Outback on and around the date of this incident. Please see Ms. Scott's labor distribution report as the best source of information confirming this response, attached.

Record Document 67-5 at 1-2.  Defendants appear to admit that Outback employees cleaned and maintained the floors.  Thus, at a minimum, Plaintiffs have demonstrated a genuine dispute of material fact as to whether Defendants created the condition of the floors prior the December 12, 2020 incidents.

The last element of Section 2800.6(B) requires that the merchant failed to exercise reasonable care.  Again, Plaintiffs presented the expert testimony of Jason English ("English").  In his report, English explained that it is "known and inevitable" in the restaurant environment that grease/oil will find its way to the floor in both the kitchen

7

and customer dining areas of restaurants by various means. Record Document 61-2 at 6. English outlined various commonly known safeguards to minimize the tracking of contaminants such as grease/oil from the kitchen area to customer dining areas. See id. at 8-10. The safeguards include choice of flooring materials, installation and maintenance of "walk-off mats," separate cleaning tools for the kitchen and dining areas, and proper cleaning chemicals and methods. Id. As previously mentioned, Plaintiffs have demonstrated – at a minimum – factual disputes in this matter relating to the cleaning chemicals used on the dining room vinyl and wood look floors and the frequency of the cleaning of the floors, two of the aforementioned commonly known safeguards. Thus, Plaintiffs have demonstrated a genuine dispute of material fact as to whether Defendants failed to exercise reasonable care as to certain commonly known safeguards to minimize the tracking of contaminants such as grease/oil from the kitchen area to customer dining areas.

## CONCLUSION

Based on the foregoing analysis, this Court finds genuine disputes of material fact as to the elements of Section 2800.6(B) such that summary judgment is not appropriate. Defendants' Motions for Summary Judgment (Record Documents 43 and 45) must be **DENIED**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 19th day of January, 2024.

_____
United States District Judge